**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ABDULAHAD T. KATTULA,

        Plaintiff,

v.

K. JIN LIM, KENNETH SCHNEIDER,
SCHNEIDER, MILLER & LIM, P.C.

        Defendants.
_____/

Bankr. Case No. 97-51164-tjt
96-55212-tjt

Advs. Pro. No. 04-4981

Case No. 07-CV-10157-DT

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On June 29, 2004, Plaintiff Abdulahad T. Kattula initiated this action against Defendants K. Jin Lim, Kenneth Schneider and their law firm, Schneider, Miller, & Lim, P.C. Pending before the court is Defendants' motion for summary judgment, filed on May 16, 2007. The court has reviewed the parties' briefs and concludes that a hearing is not necessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons set forth below, Defendants' motion will be granted.

### I. BACKGROUND

The facts relevant to Defendants' motion for summary judgment are undisputed. Plaintiff has filed three separate Chapter 7 bankruptcy petitions in this district. The first proceeding was filed on November 14, 1990 ("1990 bankruptcy proceeding"). The second proceeding was filed on November 12, 1996 ("1996 bankruptcy proceeding").

The final bankruptcy proceeding was filed on July 7, 1997 ("1997 bankruptcy proceeding").

In 1995, Plaintiff, together with a number of other investors, including Michael Stern, purchased a business in Florida. (Compl. at ¶ 8.) As a result of this business venture's financial struggles, Stern sued Plaintiff in December 1995. (Defs.' Mot. Br. at 3.) On May 1, 1996, Stern obtained a Consent Judgment against Plaintiff in excess of $1,100,000.00. (*Id.*)

In February 1996, while Stern's suit against Plaintiff was pending, Plaintiff conveyed his 49% interest in a company known as Transworld Printing, Inc. ("Transworld") to a business associate, Michael Denha. (*Id.*) Plaintiff claims that a corporation owned by his children, T.J. Bam, retained the remaining 51% of the shares in Transworld. (Pl.'s Resp. at 8.)

Because of evidence indicating that Plaintiff had not, in fact, relinquished actual control of Transworld when he conveyed his interested to Denha in February 1996, the Eastern District of Michigan appointed Adrian Balinski in Case No. 95-76219 as Receiver of Plaintiff's various entities and authorized him in to operate Transworld. (Balinski Aff., Defs.' Ex. K.)

Plaintiff contacted Gold in the fall of 1996 to file the 1996 bankruptcy proceeding in order "to get rid of the receiver." (Kattula Dep. at 87, Defs.' Ex G.) At the time the 1996 bankruptcy proceeding was filed, 11 U.S.C. § 727(a)(8) provided that discharge of bankruptcy is not permitted if the case is commenced within six years of the filing date of a prior Bankruptcy Petition. Plaintiff, through Gold, filed the 1996 bankruptcy proceeding on November 12, 1996, two days before the expiration of six years from the filing of the 1990 bankruptcy proceeding. (Compl. at ¶ 13.) Defendant Lim was

appointed Trustee of the Estate and retained Defendant Schneider as attorney for the Trustee. (Defs.' Mot. Br. at 5.)

After receiving notice of the 1996 bankruptcy proceeding, Stern filed a motion for summary judgment for nondischargeability based upon the timeliness of the petition. (12/01/03 Opinion at 3, Defs.' Ex. L.) This motion was granted on July 2, 1997. (*Id.* at 4) Plaintiff filed the 1997 bankruptcy proceeding on July 7, 1997. (*Id.*) Defendant Lim, as Trustee for the Estate of the 1996 bankruptcy proceeding, filed a motion to dismiss the 1997 bankruptcy proceeding on the basis that the 1996 proceeding was pending. (*Id.*) The motion was granted and Plaintiff's 1997 bankruptcy proceeding was dismissed on August 26, 1997. (*Id.*)

Meanwhile, in December 1996, Denha had filed an adversary proceeding in the 1996 bankruptcy proceeding in which he asserted that he maintained 100% ownership of Transworld. (Case No. 96-55212, 12/24/96 Compl. at ¶¶ 11-13, Pl.'s Ex. 3.) Denha contended that, pursuant to the February 1996 agreement with Plaintiff, Denha received a security interest in the remaining 51% of the shares of Transworld owned by T.J. Bam. (*Id.*)

Eventually, Plaintiff entered into a settlement agreement with Stern and Denha regarding various claims, including the amount owed by Plaintiff to Stern pursuant to the 1996 Consent Judgment and the ownership of Transworld. (Defs.' Mot. Br. at 5.) The settlement did not require Plaintiff himself to pay Stern any consideration. (Defs.' Ex. L at 4.) However, Plaintiff's relatives agreed to convey various assets to Stern. (*Id.*) As part of the settlement , T.J. Bam gave up its 51% ownership interest in Transworld. (Pl.'s Resp. at 9.) There is no dispute between the parties that Plaintiff had voluntarily

3

agreed with these relatives to obligate himself to repay the amount they transferred to Stern. (Defs.' Ex. L at 4-5; Kattula Aff. At ¶ 8.)

As a result of the settlement, Plaintiff's 1997 bankruptcy proceeding was reinstated and Plaintiff received his discharge shortly thereafter. (Defs.' Ex. L at 5; Pl.'s Resp. at 10.)

Plaintiff argues that Gold's premature filing of the 1996 bankruptcy proceeding necessitated the settlement with Stern. (Defs.' Mot. Br. at 6; Kattula Aff. at ¶¶ 5-8.) On May 5, 2000, Plaintiff, in his individual capacity, filed a legal malpractice claim against Gold and his law firm, Gold, Lange, & Majoros, P.C., in the Oakland County Circuit Court. (Defs.' Ex. L at 5.) Plaintiff's allegations focused on the denial of his discharge in the 1996 bankruptcy proceeding because of Gold's premature filing of the petition for relief. (*Id.*) Plaintiff contends that Gold's negligence caused T.J. Bam's loss of its 51% interest in Transwold and Plaintiff's resultant obligation to repay his family for the loss. (Pl.'s Resp. at 11.)

Defendant Lim intervened in the Oakland County litigation, arguing that Plaintiff's malpractice claim was property of the estate. (Defs.' Ex. L at 5.) The Oakland County Circuit Court agreed and dismissed the case. (*Id.*) Defendant Lim, as Trustee, retained control of the malpractice claim. (*Id.*)

After the Oakland County Circuit Court case was dismissed, Plaintiff requested that Defendant Lim investigate and pursue any claims against Gold. (Defs.' Mot. Br. at 6.) Defendant Schneider evaluated the case and believed that there were no damages suffered as a result of the premature filing of the 1996 bankruptcy proceeding because Plaintiff ultimately received a discharge, and Plaintiff did not pay Stern's consideration.

4

(*Id.* at 7.) Plaintiff requested that Defendant Lim, as Trustee of the Bankruptcy Estate, either settle the claim against Gold or assign it to Plaintiff. (*Id.*) Defendant Lim filed a motion for authority to settle the malpractice claim with Gold, Lange & Majoros P.C. for $7,500.00. (Defs.' Ex. L at 9.) Plaintiff objected to the settlement and offered to pay $7,500.00 for the assignment of the claim. (Defs.' Mot. Br. at 7.)

After conducting a hearing, the Bankruptcy Court denied Defendant Trustee Lim's motion to approve the settlement. (Defs.' Ex. L.) The court ruled that Plaintiff did not have standing to object to the settlement of the malpractice claim because the bankruptcy estate was insolvent.[1] (*Id.* at 8.)

The court declined to approve the settlement, however, because Defendant Trustee Lim was not a disinterested party. (*Id.* at 11.) The court noted that the Defendant law firm, Schneider, Miller, & Lim, P.C., had represented Gold as the trustee of various bankruptcy estates and likely wanted to continue representing Gold in future bankruptcy cases. (*Id.*) Therefore, the Defendants had an interest in maintaining a good relationship with Gold.[2] (*Id.*)

---

[1] Because the amount of claims against the bankruptcy estate was greater than the proceeds that would have been realized from the liquidation of Plaintiff's non-exempt assets, Plaintiff would not share in any distribution from the bankruptcy estate's potential recovery against Gold. (Defs.' Ex. L at 8.)

[2] In addition to denying Defendant Lim's motion, the court forwarded to the Attorney Discipline Board for the State Bar of Michigan a copy of its opinion with the request that it further investigate Defendant Schneider's decision to represent Plaintiff's bankruptcy estate with respect to the evaluation and settlement of the estate's legal malpractice claim against Gold and his law firm. (*Id.* at 15-16.) As a result of the court's decision, Defendant Lim resigned as Trustee for the estate, and Randall L. Frank was then appointed as successor Trustee. (Defs.' Mot. Br. at 8.)

By the time the Bankruptcy Court issued its opinion, the malpractice claim against Gold had become time-barred. (Defs.' Mot. Br. at 8; Compl. at ¶ 24.) Plaintiff purchased from Frank the right to proceed on any potential claims against Defendants. (Bill of Sale, Defs.' Ex. D.) On June 29, 2004, as assignee of the bankruptcy estate, Plaintiff filed claims against Defendants in Wayne County Circuit Court for legal malpractice and breach of fiduciary duty. (Compl. at ¶¶ 29, 33.)

Defendants removed the case to this court pursuant to 28 U.S.C. § 1452(a) and 28 U.S.C. § 1334(b). The case was transferred to Bankruptcy Court before returning to this court after it was determined that, if the matter went to trial, Plaintiff would be entitled to a trial by jury, and the Bankruptcy Court is not authorized to conduct a jury trial. (*Id.*) Plaintiff's legal malpractice claim against Defendants was dismissed on September 6, 2005. (9/6/05 Order, Defs.' Ex. B.)

Defendants filed the instant motion for summary judgment on April 11, 2007.

## II. STANDARD[3]

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is

---

[3]Defendants brought their motion under Federal Rules of Civil Procedure 12(b)(6), 12(c) and/or 56(c). Because both parties have presented and rely upon matters outside the pleadings, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b).

appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from those facts in a manner most favorable to the nonmoving party. *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). The court is not to weigh the evidence to determine the truth of the matter, but must determine if there is a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

### III. DISCUSSION

In their motion for summary judgment, Defendants argue that (1) Plaintiff lacks standing to assert a breach of fiduciary duty claim against Defendants because any such claim belonged to the 1996 estate and Plaintiff only stands in the shoes of the trustee of the 1997 estate; (2) Plaintiff cannot obtain damages relevant to the Transworld settlement because Transworld was not an asset of either the 1996 or 1997 estate; (3) Plaintiff's action is barred by the doctrine of *res judicata*; and (4) Plaintiff's action is barred by the Wrongful Conduct Rule. Because the court determines that Defendants are entitled to summary judgment on their second argument, the court will not reach Defendants alternative arguments.[4]

Plaintiff claims that Defendants, jointly and severally, breached their fiduciary duty to the bankruptcy estate. Plaintiff is not pursuing this case in his individual capacity, but as "assignee of Randall L. Frank, Chapter 7 Bankruptcy Trustee of the Estate of Abdulahad T. Kattula." (Compl. at ¶ 1.) Plaintiff's allegations of Defendants' alleged breach of fiduciary duty focus on Defendants' failure to pursue and preserve the estate's malpractice claim against Gold.[5] Plaintiff contends that if Gold had not filed the

---

[4]The court notes, however, that Defendants are likely not entitled to summary judgment on their first and final arguments. Factual disputes prevent summary judgment on Defendants' fourth argument, implicating the Wrongful Conduct Rule. As to Defendants first argument, because the assets of the 1996 estate were transferred to the 1997 estate, *see* Pl.'s Ex. 1, it is immaterial whether the Gold claim was originally an asset of the 1996 estate. It subsequently became an asset of the 1997 estate, and it is undisputed that Plaintiff has brought this action as assignee of the 1997 bankruptcy estate.

[5]Although Plaintiff alludes to an alleged failure by Defendants to pursue "other estate assets" aside from the Gold malpractice claim, (Pl.'s Resp. at 11), these other unidentified assets are not referenced in the complaint. The complaint, fairly read, asserts only fiduciary duty claims with respect to the treatment of the Gold malpractice claim.

1996 bankruptcy proceeding prematurely, T.J. Bam would not have been forced to relinquish Transworld, and Plaintiff would not have incurred the resulting obligation to repay his family. Plaintiff asserts that the damages from the loss of Transworld are recoverable in this case. (Pl.'s Resp. at 10.)

It is well settled that a bankruptcy trustee has capacity to sue and be sued. 11 U.S.C. § 323(b). "A trustee in bankruptcy may be liable for violations of his fiduciary duties." *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 461 (6th Cir. 1982). The standard of care required of a bankruptcy trustee is that of "an ordinarily prudent man in the conduct of his private affairs under similar circumstances and of a similar object in view." *See id.* (quoting *In re Johnson*, 518 F.2d 246, 251 (10th Cir. 1977)). In order to prevail on a claim for breach of fiduciary against a trustee in his official capacity, a plaintiff must prove that the trustee failed to exercise the requisite standard of care. *See id.* A trustee is personally liable only for willful and deliberate acts in violation of his fiduciary duties. *Id.*

A plaintiff wishing to sue must allege a distinct and palpable injury to himself. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42, n.22 (1976). A plaintiff cannot proceed with a claim if it is not likely that his injury will be redressed by a favorable decision. *See Prentis Family Found. v. Barbara Ann Karmanos Cancer Inst.*, 698 N.W.2d 900, 913 (Mich. Ct. App. 2005).

Plaintiff, as assignee of the trustee of the estate, is limited to the recovery of those damages that the assignor could have recovered. *See Prof. Rehab. Assoc. v. State Farm Mut. Auto. Ins. Co.*, 577 N.W.2d 909, 914 (Mich. Ct. App. 1998) (citing *First of America Bank v. Thompson*, 552 N.W.2d 516 (Mich. Ct. App. 1996)). Therefore,

Plaintiff can only recover those damages which the estate suffered as a proximate cause of Defendants' alleged breach of fiduciary duty. *See id.* at 914-15. Plaintiff is not entitled to recover any damages he may have suffered in his capacity as debtor.

Pursuant to 11 U.S.C. § 541(a)(1), the filing of a bankruptcy petition constitutes a commencement of the case and creates an estate comprised of (except as otherwise provided) all legal or equitable interests of the debtor in property *as of the time of commencement*. After commencement, the property of the estate is thus distinct from the property of the debtor. Any interest in property acquired by the estate after the commencement of the case belongs to the estate; however, any post-petition property acquired by the debtor remains the separate property of the debtor. *See In re Winom Tool & Die, Inc.*, 173 B.R. 613, 624 (Bankr. E.D. Mich. 1994). Therefore, any income or obligations assumed by the debtor after the filing do not belong to the estate. *See generally Tennessee Valley Authority v. Kinzer*, 142 F.2d 833, 838 (6th Cir. 1944).

Plaintiff's complaint is premised on the theory that Defendants' failure to pursue the Gold malpractice claim damaged the estate because of the loss of value sustained due to the Transworld settlement. Defendants argue that Plaintiff cannot obtain damages relevant to the Transworld settlement because Transworld was not an asset of either the 1996 or 1997 estate. It is undisputed that Plaintiff himself did not own any shares of Transworld at the time either the 1996 or 1997 proceeding was initiated. Under 11 U.S.C. § 541(a)(1), therefore, Transworld was simply not an asset of the estate the value of which could have been lost due to any breach of Defendants.

Plaintiff argues, however, that as a result of Gold's alleged malpractice, he obligated himself to repay T.J. Bam, owned by his family, for the loss suffered in the

10

October 31, 1998 settlement. (Pl.'s Resp. at 9.) The court rejects this theory. Plaintiff incurred this obligation in his personal capacity, not as trustee of the 1997 estate. Plaintiff, as assignee, can pursue only those damages suffered by the estate. An obligation to repay a debt is suffered by the estate if it suffered by the debtor at the commencement of his bankruptcy proceeding. *See In re Winom Tool & Die, Inc.*, 173 B.R. at 624. Plaintiff's promise to repay his family for the loss of Transworld, therefore, is not part of the estate because he assumed the obligation *after* the commencement of the proceeding. Therefore, Plaintiff's debt to his family is his obligation alone. Under Plaintiff's theory of proximate cause, the most he could prove at trial is that he personally suffered damages as a result of the failure to pursue the Gold malpractice claim. He cannot establish that the estate suffered any damages. Furthermore, Plaintiff claimed no other recoverable damages in his complaint.

Plaintiff does not dispute that the only claims he can make are those that belong to the estate, (Pl.'s 4/1/05 Resp. at 13-14, Defs.' Ex. E), or that he obligated himself to repay his family for the loss of Transworld after the commencement of his bankruptcy proceeding, (Pl.'s Resp. at 3-4). Because damages with respect to Transworld are not part of the estate and Plaintiff did not claim any other distinct injuries in his complaint, the court concludes as a matter of law that there is no genuine issue of fact that necessitates a trial. Plaintiff cannot prevail on his claim for breach of fiduciary duty. Therefore, Defendants are entitled to summary judgment.

## IV. CONCLUSION

IT IS ORDERED that Defendants' "Motion For Summary Judgment" [Dkt # 11] is GRANTED.

11

                                                s/Robert H. Cleland
                                                ROBERT H. CLELAND
                                                UNITED STATES DISTRICT JUDGE

Dated: June 22, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 22, 2007, by electronic and/or ordinary mail.

                                                s/Lisa Wagner
                                                Case Manager and Deputy Clerk
                                                (313) 234-5522